**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **NANCY C. WALKER, Individually and as the Natural Parent of DINESICA WALKER, a Deceased Minor, and in her capacity as the Personal Representative of the Estate of DINESICA WALKER, a deceased minor,** | § | |
| **Plaintiffs,** | § | |
| **vs.** | § | **Civil Action No. 1:08-CV-0121-ODE** |
| **BLITZ USA, INC.** | § | |
| **Defendant.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

PLAINTIFF, Nancy C. Walker, Individually and as the natural parent of Dinesica Walker, a deceased minor, as well as in her capacity as the Personal Representative of the Estate of Dinesica Walker, a deceased minor, files this, her First Amended Complaint against Defendant Blitz USA, Inc., as follows:

## PARTIES

1. Plaintiff Nancy C. Walker is the natural mother of Dinesica Walker, a deceased minor. Plaintiff Nancy C. Walker brings this action individually, in regard to her own injuries and in her

capacity as the natural parent and mother of Dinesica Walker, deceased, as well as her capacity as the Personal Representative of the Estate of Dinesica Walker. At all relevant times, Nancy C. Walker is and was a resident and citizen of the State of Georgia.

2. Plaintiff Nancy C. Walker qualifies to serve as the Personal Representative of the Estate of Dinesica Walker, and has been, or will be, appointed in such capacity.

3. Dinesica Walker was the daughter of Plaintiff Nancy C. Walker and Gerard Walker who was born on January 6, 2004 and died on December 8, 2006 at the age of two (2) as a result of the incident which forms the basis of this suit.

4. Defendant Blitz USA, Inc. ("Blitz"), the manufacturer of the subject portable plastic gasoline container is an Oklahoma corporation, where it also maintains its principal place of business. Defendant Blitz has filed an answer herein and no further service of process is necessary.

5. Defendant Blitz USA, Inc. is subject to the jurisdiction and venue of this Court.

6. Defendant Blitz has regularly transacted business in the State of Georgia and continues to do so.

7. Defendant Blitz derives substantial revenue from goods sold and used in the State of Georgia.

8. Defendant Blitz does reasonably expect, or should reasonably expect, that its business activities could or would have consequences within the State of Georgia.

9. Fred's Stores of Tennessee, Inc. has admitted that it sold gasoline containers in its Hawkinsville, Georgia location in 2004, 2005, and 2006, including the same Model 50810 used by Nancy Walker, and further admits it sold only Blitz brand gasoline containers at that store.

## FACTUAL ALLEGATIONS

10. On or about December 8, 2006, Plaintiff Nancy C. Walker and her minor daughter, Dinesica Walker were at Nancy C. Walker's mother's place of residence on Cemetery Road in Rochelle, Georgia. While at the subject residence, Plaintiff Nancy C. Walker, attempted to start a fire in a freestanding fireplace

inside the home. Plaintiff located a tin can and went outside where she knew a portable plastic gasoline container had been kept. The subject portable plastic gasoline container was a Blitz product that had been designed, manufactured, marketed, distributed and sold by the Defendant through its local distributor, Fred's of Tennessee, Inc., located in Hawkinsville, Georgia. Plaintiff Nancy C. Walker poured a small amount of gasoline into the tin can, but decided that she had poured too much into the can. She then poured some amount of gasoline back into the Blitz gasoline container, screwed the spout back on the container, and set the container down on the porch outside of the subject residence. She returned inside the home and poured some of the gasoline from the tin can onto the logs in the wood-burning fireplace. When Plaintiff subsequently tossed a match into the fireplace in order to light the logs, the gasoline vapors flashed, catching Nancy Walker's pant leg on fire. Unable to pat out the fire on her burning clothing with her hands, Plaintiff exited the residence. At some point after exiting the residence, Plaintiff Nancy Walker heard a loud "boom" and experienced ringing in her left ear. Plaintiff believes, and therefore alleges that the flames that then existed on her lower extremities came into contact with vapors emitted from the plastic gasoline container located on the porch

of her mother's home, causing a flashback into the gasoline container resulting in a violent explosion. Plaintiff further believes, and therefore alleges, that her injuries were exacerbated as a result of such explosion and that the passageway into the home was blocked by fire resulting in the inability of her and others at the scene to rescue her minor daughter Dinesica Walker, and ultimately resulting in the death of Dinesica Walker.

11. Local emergency personnel were unable to save little Dinesica Walker.

12. Dinesica Walker died as a result of injuries she sustained in the fire.

13. At the time of her death Dinesica Walker was 2 years old and had a reasonable life expectancy in excess of 77 years.

14. Plaintiff Nancy C. Walker was taken to Crisp Regional Hospital and later life-flighted to Augusta Burn Center, where she was diagnosed with a forty-five (45%) total body surface burn. She survived the ordeal and was released from the hospital in late March, 2007.

15. The portable gasoline container was defective and unsafe for its intended purposes at the time it left the control of the Defendant in that the design failed to include a flame arrester device, which is a necessary safety device that would have prevented this tragedy. A flame arrester is a small piece of metal placed in each opening of a gasoline container to prevent the flashback of flames into the container. It can be designed as either a perforated metal disc or a woven metal wire mesh screen.

16. The efficacy of flame arresters has been known to the manufacturing industry for decades, and particularly to the manufacturers of portable gasoline containers. Flame arresters were first incorporated into gasoline containers in the 1950's and into consumer gasoline containers in 1978, having been marketed by Eagle Manufacturing Company. Eagle Manufacturing Company first placed flame arresters in portable plastic gasoline containers in 1988, and established the state of the art.

17. Prior to the incident that ultimately killed Dinesica Walker and injured Nancy C. Walker, the Defendant had known or

should have known for decades that its gasoline containers were susceptible to flashback, i.e., the gasoline vapors ignite, and the flames follow the vapor trail back into the can causing the can to explode and/or spew flames and burning gasoline.

18. As a direct and proximate result of the acts and omissions of the Defendant, Plaintiff has been injured and otherwise suffered damages for which the Defendant is liable.

**COUNT 1 (NEGLIGENCE)**

19. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

20. Defendant was negligent by its acts and/or omissions in the following respects:

a. It failed to use due care in the design, manufacture, and distribution of the subject portable gasoline container;

b. It failed to provide a reasonably safe portable gasoline container;

c. It failed to provide a reasonably safe design in the construction and manufacture of the portable gasoline container;

d. It failed to provide adequate safeguards to ensure safe use of the product;

e. It designed, manufactured, sold, and distributed a gasoline container which malfunctioned;

f. It failed to guard against hidden or latent defects;

g. It failed to design the product in such a way as to guard against flame and flashback;

h. It failed to include a flame arrester in the product design;

i. It failed to include explosion proofing material in the product design;

j. It failed to include explosion suppression material in the product design;

k. It failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

l. It failed to adequately warn consumers and users of inherent dangers associated with use of its portable gasoline containers as well as the subject gasoline container;

m. It failed to provide proper instructions for use of its portable gasoline containers and failed to provide adequate warnings of the dangers associated with use of its product;

n. It failed to design and incorporate a warning that would reasonably catch the attention of consumers and users, be comprehensible to consumers and users, give fair indication of the specific risks involved, and be of an intensity justified by the magnitude of the risks to consumers and users;

o. It failed to actively seek data and information and maintain a library documenting incidents in which consumers, users, and bystanders are injured and/or killed when encountering such defective portable gasoline containers;

p. It failed to actively seek data and information and maintain a library documenting incidents involving explosions and/or internal combustion of portable gasoline containers;

q. It failed to conduct adequate fire testing on the product;

r. It failed to properly test portable gasoline containers and prototypes thereof with flame arresters and/or explosion suppression materials;

s. It failed to protect foreseeable users of the portable gasoline containers from the dangers present in the use of their containers that they knew or should have known existed;

t. It failed to give adequate notice to consumers and users of the concealed danger, namely that gasoline vapors outside the container, when exposed to an ignition source, can ignite and that the ensuing flames can travel back to and inside the container, causing internal combustion and explosion;

u. It failed to provide post sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

v. It failed to make subsequent remedial measures or recall after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

w. It ignored or failed to investigate complaints about the defects existing in the product that rendered it unreasonably dangerous for its intended use;

x. It ignored or failed to investigate scientific, technological, and industry information and studies regarding the efficacy of flame arresters and/or explosion suppression materials;

y. It ignored or failed to investigate national publications relating to the dangers and risks involved with the use of portable gasoline containers that do not contain flame arresters;

z. It ignored or failed to investigate other lawsuits involving similar claims and incidents in which consumers, users, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gasoline containers;

aa. It failed to request that the ASTM International F15.10 Subcommittee consider a standard to include flame arresters and/or explosion suppression materials in portable gasoline containers;

bb. It failed to report incidences and lawsuits involving consumers, users, and/or bystanders, who have been burned, injured and/or killed when

encountering its portable gasoline containers to the Consumer Product Safety Commission (CPSC) as required by law;

cc. It placed into the stream of commerce a portable gasoline container which was unfit for its intended use;

dd. It placed into the stream of commerce a dangerous article likely to cause injury in its ordinary use;

ee. It placed into the stream of commerce a product that was defective in its design;

ff. It placed into the stream of commerce a product that was defective in its manufacture; and

gg. It placed into the stream of commerce a product that was defective in its failure to provide adequate warnings and instructions.

hh. Defendant knew or, in the exercise of ordinary care, should have known all of the above stated averments.

ii. As an actual and proximate result of the Defendant's negligence, the portable gasoline container was in a defective and unreasonably dangerous condition when it left the manufacturer.

jj. The acts and/or omissions of the Defendant described herein constitute a flagrant disregard for the safety of those who might be harmed by their portable gasoline containers, including Decedent and Plaintiff. The Defendant's actions, given their knowledge of past injuries and deaths show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care such as would raise the presumption of conscious indifference to the consequences involved, for which Defendant is liable for punitive damages in an amount to be determined by a jury.

kk. Defendant failed to take precautions to prevent the ignition of vapors from outside sources, including flames.

21. Defendant knew or should have known that the subject portable gasoline container caused unreasonably dangerous risks which Plaintiff would not be aware. Defendant nevertheless manufactured, packaged, advertised, marketed, promoted, sold and distributed the subject portable gasoline container in a negligent manner knowing that there were safer designs and alternatives available.

22. As a direct and proximate result of the negligence of the Defendant, Plaintiff and Plaintiff's Decedent each sustained serious and permanent injuries, including but not limited to, where applicable: death; physical disfigurement; scarring; past, present and future physical pain and suffering; past, present and future mental pain and suffering; physical impairment; physical disability; mental anguish; loss of capacity for the enjoyment of life; loss of time in life that could have been spent doing things other than going to doctors and receiving medical treatment; loss of earnings; loss of the ability to earn money in the past and in the future; expenses of hospitalization and medical treatment; expenses of medical and nursing care and treatment; fear and mental anguish associated with witnessing the death of an immediate family member, and all other items of damage permitted by law or otherwise set forth under this Complaint.

**COUNT II (STRICT LIABILITY—DEFECTIVE PRODUCT)**

23. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

24. The subject Blitz gasoline container as designed, developed, researched, manufactured, and supplied by the

manufacturing Defendant was not merchantable nor reasonably suited to its intended purpose.

25. The risk of severe and life threatening injury associated with defects in the subject Blitz gasoline container constituted dangers and risks which were inherent in the design of the product that served to outweigh any utility it may have had.

26. The manufacturing Defendant knew, or should have known, that the subject Blitz gasoline container was and is a dangerously defective product that posed an unacceptable risk unknown to, and unknowable by, the consuming public.

27. As a direct and proximate result of the design defects existing in regard to the subject Blitz gasoline container Plaintiff has suffered injury and damages for which she is entitled to recover.

**COUNT III (STRICT LIABILITY—FAILURE TO WARN)**

28. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

29. At the time the manufacturing Defendant placed the subject

Blitz gasoline container into the stream of commerce for sale or use by Plaintiff, said Defendant failed to accompany their inherently dangerous product with sufficient warnings to advise users of the product of the risks associated with its use.

30. The manufacturing Defendant further failed to provide adequate and proper instructions for use of its portable gasoline containers and failed to provide adequate warnings of the dangers associated with the uses and misuses of its product.

31. The manufacturing Defendant failed to provide warnings that were calculated to call to the attention of a reasonably careful person the nature and extent of the dangers involved in using or misusing its product.

32. The manufacturing Defendant incorporated a warning onto its portable gasoline containers by simply embossing letters on the side of the plastic, the letters being in the same color as the background, both red in color. Such warning was inadequate and insufficient as it was difficult, if not impossible to read under certain circumstances, and in no case was adequate or conspicuous to the ultimate user. To the extent that any warning was provided by the manufacturing Defendant with the subject

product, the warning was inadequate and insufficient thus causing the product to be defective.

33. As a direct and proximate result of the manufacturing Defendant's failure to provide adequate warnings with the subject Blitz gasoline container Plaintiff has suffered injury and damages for which he is entitled to recover.

**COUNT IV (STRICT LIABILITY—FAILURE TO TEST)**

34. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

35. At the time the manufacturing Defendant placed the subject Blitz gasoline container into the stream of commerce for sale or use by Plaintiff, said Defendant failed to perform adequate testing of the product prior to placing said product in the stream of commerce, in that adequate testing would have shown *inter alia*, that the subject Blitz gasoline container posed a substantial and serious risk of harm to consumers and users of the product which were not accurately disclosed.

36. As a direct and proximate result of the manufacturing Defendant's breach of their duty to adequately test the subject

Blitz gasoline container, Plaintiff has suffered injury and damages for which she is entitled to recover.

**COUNT V (WRONGFUL DEATH)**

37. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

38. As a direct and proximate result of the homicide and wrongful death of Dinesica Walker, as caused by the acts and omissions of the Defendant herein, Plaintiff as the natural parent and mother of Dinesica Walker, has been forever deprived of her daughter's love, aid, services and companionship. By reason of the negligent and intentional acts of the Defendant which resulted in the homicide and premature death of Dinesica Walker, Plaintiff for herself, and all other statutory beneficiaries, is entitled to recover from the Defendant a sum equal to the full value of Dinesica Walker's life and all other damages provided by law.

**COUNT VI (PRE-DEATH INJURY AND PAIN AND SUFFERING)**

39. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

40. As a direct and proximate result of the acts and omissions of the Defendant, Dinesica Walker, was injured and suffered damages prior to her death, for which Plaintiff may recover in her capacity as the Personal Representative of the Estate of Dinesica Walker. Such damages include, but are not limited to: pre-death physical injury; pre-death physical pain and suffering as well as pre-death mental pain and suffering associated with burning to death; pre-death impairment, disability and disfigurement; loss of capacity to enjoy life; pre-death fear and mental anguish of the child associated with her impending death; as well as all other special and general damages permitted by law.

**COUNT VII (PUNITIVE DAMAGES)**

41. Plaintiff adopts and re-alleges each paragraph above, as if fully set forth herein.

42. The conduct of the Defendant, as set forth herein above was intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that the Defendant acted only out of self interest and personal monetary gain. Such conduct evidences an intent to cause harm

to Plaintiff and Plaintiff's decedent as provided under O.C.G.A. § 51-12-5.1. Accordingly, punitive damages should be imposed against the Defendant pursuant O.C.G.A. § 51-12-5.1 and all other applicable laws, to punish and deter the Defendant from repeating or continuing such unlawful conduct.

**WHEREFORE, Plaintiff prays:**

a. That Plaintiff be granted a trial by jury in this matter;

b. That the Court enter judgment against Defendant for the wrongful death of Dinesica Walker and award Plaintiff, as her surviving mother, the full value of Dinesica Walker's life in addition to all other damages permitted under law;

c. That the Court enter judgment against Defendant for all general and compensatory damages allowable to Plaintiff, in her capacity as the personal representative of the Estate of Dinesica Walker including damages for all pre-death injuries and pre-death pain and suffering inflicted upon Dinesica Walker, a deceased minor child;

d. That the Court enter a judgment against the Defendant for all general damages allowable to Plaintiff for her own personal injuries and damages, including but not limited to damages for her past present and future physical and

mental pain and suffering, disfigurement, and other disabilities;

e. That the Court enter a judgment against the Defendant for all special damages allowable to Plaintiff for her own personal injuries and damages, including the cost of all of Plaintiff's past, present and future medical expenses;

f. That the Court enter a judgment against the Defendant serving to award Plaintiff punitive damages under the provisions of O.C.G.A. § 51-12-5.1;

g. That the Court enter a judgment against the Defendant for all other relief sought by Plaintiff under this Complaint or otherwise allowable by law;

h. That the costs of this action be cast upon the Defendant; and

i. That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Respectfully submitted this 25th day of February, 2009.

By: THE ANDERSON LAW FIRM

HANK ANDERSON / RCB

Hank Anderson
Texas Bar No: 01220500
Gant Grimes
Texas Bar No.:24042651
**[By Robert C. Buck with Express Permission]**

Attorneys for the Plaintiff Nancy C. Walker

**The Anderson Law Firm**
**4600 Belair**
**Wichita Falls, TX 76310**
**(940) 691-7600**
**(940) 691-1790 (facsimile)**

Robert C. Buck
Georgia Bar No. 092495

BUCK LAW FIRM
ATTORNEYS AT LAW
Suite 940
1050 Crown Pointe Parkway
Atlanta, Georgia 30338
(678) 338-4999 Telephone
(678) 338-4990 Facsimile
rbuck@buckfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **NANCY C. WALKER, Individually and as the Natural Parent of DINESICA WALKER, a Deceased Minor, and in her capacity as the Personal Representative of the Estate of DINESICA WALKER, a deceased minor,** | § | |
| **Plaintiffs,** | § | |
| **vs.** | § | **Civil Action No. 1:08-CV-0121-ODE** |
| **BLITZ USA, INC.** | § | |
| **Defendant.** | § | |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

Counsel for Plaintiff Nancy C. Walker hereby certify that this pleading was prepared in Courier New font, 12 point, in compliance with Local Rule 5.1.B.

This 15th day of February, 2009.

Robert C. Buck
Georgia Bar No. 092495

BUCK LAW FIRM
ATTORNEYS AT LAW
Suite 940
1050 Crown Pointe Parkway
Atlanta, Georgia 30338
(678) 338-4999 Telephone
(678) 338-4990 Facsimile
rbuck@buckfirm.com
Attorney for the Plaintiff Nancy C. Walker

**LOCAL RULE 5.4 CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel for all parties in this action with copies of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** and **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1** by depositing copies of same in the U.S. mail, postage prepaid, and have filed the CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1 via electronic filing, to the following counsel:

Michael J. Goldman
HAWKINS & PARNELL, LLP
4000 Sun Trust Plaza
303 Peachtree Street NE
Atlanta, GA 30308-3243.

This 25th day of February, 2009.

Robert C. Buck
Georgia Bar No. 092495

BUCK LAW FIRM
ATTORNEYS AT LAW
Suite 940
1050 Crown Pointe Parkway
Atlanta, Georgia 30338
(678) 338-4999 Telephone
(678) 338-4990 Facsimile
rbuck@buckfirm.com
Attorney for the Plaintiff Nancy C. Walker